# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOUCH L., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. 18 C 02579 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Touch L. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). 42 U.S.C. §§ 405(g), 423 *et. seq,* 1381 *et seq.* The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB on July 12, 2014, and for SSI benefits on July 17, 2014, alleging that she became disabled on July 10, 2014[1], due to headaches, dizziness, arthritis pain, low blood pressure, pelvic infection, swelling in both arms and legs, depression, memory loss, anxiety, and blurred vision in both eyes. (R. at 219–28, 279). The applications were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id*. at 97–98, 131–32, 160–61). On December 12, 2016, Plaintiff, represented by counsel, and through an interpreter, testified at a hearing before an Administrative Law Judge (ALJ). (*Id*. at 36–57). The ALJ also heard testimony from Kari Seaver, a vocational expert (VE). (*Id*.). The ALJ denied Plaintiff's request for benefits on April 10, 2017. (*Id*. at 17–29). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 10, 2014. (*Id*. at 19). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, anemia, vision deterioration, major depressive disorder, generalized anxiety disorder, and post–traumatic stress disorder (PTSD), were severe impairments. (*Id*.). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id*. at 20). The ALJ

---

[1] Plaintiff amended her onset date at the hearing. (R. 249).

then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff has the RFC to perform light work, except:

> [S]he can occasionally be around unprotected heights and dangerous heavy moving machinery and she can never perform commercial driving. She can understand, remember, and carry out routine and repetitive tasks. She is not able to meet hourly production quotas but can meet end of day quotas. Her judgement is limited to simple work related decisions with occasional interaction with supervisors and coworkers but only superficial interaction with the public.

(*Id*. at 23). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was capable of performing her past work as an assembler. (Id. at 28). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through the date of the ALJ's decision. (*Id*. at 28–29). The Appeals Council denied Plaintiff's request for review on October 2, 2017. (*Id*. at 1–3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

"reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary

4

support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## III. DISCUSSION

Plaintiff raises several arguments in her request for reversal or remand. After reviewing the record and the parties' briefs, the Court is persuaded by Plaintiff's argument about the ALJ's flawed assessment of the medical opinion evidence and rejection of the treating physician's opinions.[3] The ALJ failed to provide an accurate and logical bridge between the medical opinion evidence and her conclusions about the impact of Plaintiff's mental limitations on her ability to work. In particular, the ALJ did not adequately explain why Plaintiff's treating physician's opinions received very little weight, while those of the examining and non-examining consulting sources received partial weight.

An ALJ evaluating a claim of disability "must consider all medical opinions in the record." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527(b). More weight is given to "the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527(c)(1). Because an examining doctor has "greater familiarity with the claimant's condition and circumstances," an ALJ can reject an examining doctor's opinion "only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."

---

[3] Because the Court remands on these bases, it need not address Plaintiff's other arguments at this time.

*Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). The opinion of a treating doctor "generally is entitled to controlling weight if it is consistent with the record, and it cannot be rejected without a 'sound explanation.'" *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2) and *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)).[4]

The ALJ also "has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning." *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *see also Roddy*, 705 F.3d at 636 ("Although the ALJ was not required to address in writing every piece of evidence or testimony presented, he was required to provide 'an accurate and logical bridge' between the evidence and his conclusions.") (internal citation omitted).

In this case, in reaching her conclusion about Plaintiff's mental limitations, the ALJ discussed the opinions and records of five doctors: (1) Manjit Sandhu, M.D.; (2) Theodore Handrup, M.D.; (3) Dr. Chirag Raval, M.D.; (4) Kirk Boyenga, Ph.D.; and (5) Howard Tin, Psy.D.

**A. Dr. Manjit Sandhu**

Dr. Sandhu was Plaintiff's treating physician. Dr. Sandhu treated her on a bi-monthly basis since July 2014. (R. 420). He noted that she survived a severe family trauma in her country of origin, Cambodia, which resulted in, among other things, PTSD and recurrent nightmares. (*Id.* at 612). The record contains Dr. Sandhu's

---

[4] In 2017, the Social Security Administration (SSA) adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules only apply to disability applications filed on or after March 27, 2017, they are not applicable here. *See id; see also* SSR 96-2p.

treatment notes and multiple evaluations of Plaintiff. In one assessment in 2015, Dr. Sandhu reported Plaintiff's diagnosis of major depressive disorder, recurrent, and that she was not responding to medication or antidepressants and he planned to give her electroconvulsive therapy (ECT). (*Id.* at 582–84). In responding to a Mental RFC questionnaire in 2016, Dr. Sandhu reported that Plaintiff was markedly limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.* at 608–10). He prescribed and adjusted multiple medications for Plaintiff's depression. (*Id.* at 619, 627–28). The ALJ gave Dr. Sandhu's opinions "very little weight." (*Id.* at 26).

The ALJ did not identify Dr. Handrup by name but noted his diagnosis of her recurrent major depressive disorder and anxiety. (*Id.* at 25, 421–22). Dr. Handrup observed, on examination, that Plaintiff had an anxious, depressed mood, poor insight, poor judgment, and she admitted to suicidal ideation with a plan to overdose or hang herself. (*Id.* at 422). The ALJ also cited medical records showing that Plaintiff was hospitalized in February 2015 due to depression and suicidal thoughts with a plan to carry it out. (*Id.* at 25).[5]

**B. Dr. Chirag Raval**

Dr. Raval conducted a psychological consultative exam of Plaintiff in July 2015. Dr. Raval noted that she was nervous, wearing pajamas, and appeared on the verge of tears. (R. at 601). Her mood was "hopeless". (*Id.*). She did not know the date—she guessed the year was 2013 when it was 2015. (*Id.*). She did not know any topics in

---

[5] The record reflects that this was Plaintiff's third hospitalization for psychiatric reasons. (*Id.* at 410, 612–13).

the news or who the President of the United States was; she was unable to tell how many nickels were in a dollar and fifteen cents and could not name five cities; she could not do simple mathematical calculations or serial sevens; and did not know how to describe how a tree and bush are alike. (*Id.* at 602). When Dr. Raval asked her the meaning of two proverbs, she did not know but he thought this "may be cultural." (*Id.*). Dr. Raval opined that she could not manage her own funds. (*Id.*). He summarized that Plaintiff had been in-patient for psychiatric treatment, was on multiple psychotropics, and there were "multiple notes supporting extensive psychiatric history." (*Id.* at 603). Dr. Raval diagnosed her with depression with psychotic features and generalized anxiety disorder. (*Id.* at 602). The ALJ gave Dr. Raval's opinion about Plaintiff not being able to manage funds "partial weight." (*Id.* at 25).

**C. Dr. Boyenga and Dr. Tin**

The ALJ noted that both non-examining state agency consultants Drs. Boyenga and Tin believed Plaintiff had moderate problems with concentration, persistence, or pact, and Dr. Tin believed she had moderate limitations in social function. (R. at 27). In discussing their assessments, the ALJ decided to increase the weight she initially considered. The ALJ did this because their findings about Plaintiff's specific limitations were consistent with the medical evidence, which as the ALJ described, "show[ed] problems with concentration in [Plaintiff's] consultative examination and treatment notes indicating problems with feelings of hopelessness and withdrawal." (*Id.*). The ALJ gave the opinions of Drs. Boyenga and Tin "partial weight." (*Id.*).

8

**D. The ALJ's Analysis of the Medical Opinion Evidence**

The ALJ did not give a "sound explanation" for rejecting the opinions of treating doctor Dr. Sandhu. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ found "no support for the level of restrictions [Dr. Sandhu] asserted" and believed his assessments to be "extremely inconsistent with other examining and treating sources." (R. at 26). But the ALJ did not identify any other "treating source" in the record. So it is not clear what other treating doctor the ALJ was referring to when Dr. Sandhu is the only one identified. It is also not clear what examining sources the ALJ used as a comparison. The only psychological consultative examining source identified is Dr. Raval. (*Id.* at 600–03). Comparing Dr. Raval's assessment to Dr. Sandhu's, the Court does not see how they are "extremely inconsistent," rather, they appear to be generally consistent. *See Hardy*, 908 F.3d at 312 ("An ALJ must grapple with lines of evidence that are contrary to her conclusion."). It is true that some of Dr. Sandhu's descriptions were more severe than other doctors (e.g. that Plaintiff was "totally incapacitated"), but that does not mean they were "extremely inconsistent."

In addition, the ALJ explained that she gave "partial weight" to Dr. Raval's opinion that Plaintiff could not handle her own funds because "it is unclear whether the lack of mathematical ability was the result of mental impairments or from her lack of formal education." (*Id.* at 25). But Dr. Raval did not state in his report that Plaintiff's "lack of formal education" impacted his assessment of her mental limitations. Dr. Raval also did not say that the limitations he noted in his mental

9

status examination were due to "language barriers," as the ALJ hypothesized. (*Id.* at 26). These statements by the ALJ demonstrate that she improperly discounted evidence favorable to Plaintiff based on speculation. *See White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("[s]peculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."); *see also Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995) (claimant is "entitled to a decision based on the record rather than a hunch.").

The ALJ also summarily concluded that Dr. Raval's exam "did not suggest marked levels of impairment in all areas of mental health" (R. at 26), but did not provide any substantive discussion, particularly about the limitations Dr. Raval *did* identify. *See Hardy*, 908 F.3d at 312 ("An ALJ is required to consider findings that support a treating doctor's opinion; failure to do so is error."); *Jelinek*, 662 F.3d at 811 ("[a] decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support her conclusions adequately, remand is appropriate"); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("the act of summarizing the evidence is not the equivalent of providing an analysis of the evidence.").

In sum, the Court does not understand how the assessments of the examining (or non-examining) sources were "extremely inconsistent" with Dr. Sandhu's or how the ALJ found "*no support* for the level of restrictions [Dr. Sandhu] asserted." (R. at 26) (emphasis added). The ALJ's conclusions are additionally confusing because she gave Drs. Boyenga and Tin's opinions *more* weight *because* they were in line with Dr. Sandhu's and Dr. Raval's assessments of Plaintiff's mental impairments. (*Id.*). Also

confusing is the ALJ's discussion that "statements of disability are opinions on an issue reserved to the Commissioner..." (*Id.*). The ALJ did not specify which statement she was referring to, but the Court assumes it was Dr. Sandhu's, that Plaintiff's disorder made her "totally incapacitated and [she] will not likely be able to obtain any gainful employment for the rest of her life." (*Id.* at 420). The ALJ may be right that this statement is non-binding, but that does not explain why all of Dr. Sandhu's other findings deserved "very little weight."

Moreover, as Plaintiff argues in her brief (Dkt. 15), if a treating physician's opinion is not given controlling weight, an ALJ must determine what value the assessment merits (*Scott*, 647 F.3d at 740), considering a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors. 20 C.F.R. § 404.1527(c)(2); *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). SSR 92-2p states that treating source medical opinions "are still entitled to deference and must be weighed using *all* of the factors provided in 20 C.F.R. § 404.1527." *Id.* (emphasis added); *see also Fox v. Berryhill*, 2017 U.S. Dist. LEXIS 26765, at *18 (N.D. Ill. Feb. 27, 2017) ("the ALJ must sufficiently account for the factors in 20 C.F.R. 404.1527 [and] the ALJ did not do so here preventing this Court from assessing the reasonableness of the ALJ's decision in light of th[ose] factors") (internal citations and quotations omitted).

Here, the ALJ did not discuss any of these factors in relation to Dr. Sandhu. Thus the Court cannot assess the reasonableness of the ALJ's decision. Moreover, the record reflects that had the ALJ considered these factors, they likely would have weighed in Plaintiff's favor. Dr. Sandhu's specialization included psychiatry, emergency medicine and internal medicine. Plaintiff had been treated by Dr. Sandhu since July 2014 and saw him on a bi-monthly basis. (R. at 420). To undermine Dr. Sandhu's findings, the ALJ relied on the fact that he stated at one point that he had treated Plaintiff for five years but in other statements he said he treated her since July 2014. (*Id*. at 26). But reliance on this one perceived inconsistency does not explain why the ALJ discounted Dr. Sandhu's findings. Indeed, there is only *one* record where Dr. Sandhu said he had been treating Plaintiff for 5 years. All of the other records, which the ALJ cites, consistently state that he had treated her since July 2014. So the ALJ did not consider that the one entry could have been a mistake, and could have reached out to the doctor for clarification.

In sum, remand is required because the ALJ erred by failing to support her decision to reject Dr. Shandhu's opinions with substantial evidence.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [14] is **GRANTED**, and the Commissioner's motion for summary judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings

consistent with this opinion.

E N T E R:

Dated: January 31, 2019

_____
MARY M. ROWLAND
United States Magistrate Judge